Case number 20-1591. Reporters Committee for Freedom of the Press and Associated Press Appellants v. Federal Bureau of Investigation and United States Department of Justice. Ms. Townsend for the appellant. Mr. Busso for the appellees. Thank you, Your Honor. May it please the Court. As you know, there are two issues presented in this appeal. First, whether the FBI has met its burden to demonstrate that the records it has held in whole or in part pursuant to Exemption 5 fall within the scope of the deliberative process privilege. And second, whether the FBI has met its burden to demonstrate that it is reasonably foreseeable that harm to an interest the deliberative process privileges intended to protect would result from disclosure of that material. Because the District Court's grant of summary judgment to defendants should be reversed on either ground, I'll start, Your Honors, by addressing the second issue, and I'll come back to the first during the course of my arguments. The foreseeable harm provision that Congress added to FOIA in 2016 made a consequential meaningful change to the Act. Now, under FOIA's plain language, where disclosure is not prohibited by law, agencies are required to disclose records under FOIA, even if they fall within the scope of an exemption, unless the agency can demonstrate that it reasonably foresees that disclosure would in a litigation context, an agency must demonstrate in a manner sufficient for the court to conduct an over-review, not only that Exemption 5 applies, but that it's reasonably foreseeable that disclosure of the specific exempt material that the agency seeks to withhold would harm an interest that Exemption 5 is intended to protect. Ms. Townsend, let me ask some questions about what you just said. In the Court's Machado opinion, it describes a government affidavit on a FOIA request. The affidavit says that disclosure would discourage attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals. And that was enough. So, applying that standard to the facts of our case, what more do you think the government needed to do here that it didn't do here? And I think, Your Honor, that Judge Katz's opinion in Machado Amadas, it's distinguishable. It's very instructive in the way that it's distinguishable. At issue in that case was one type of record. Here, we're dealing with multiple different types records, including... Let me pause there, because that is part of my question, is whatever the government needs to do for Category 1 in our case, if that same explanation applies to Categories 2 through 6, is it okay for the government to repeat its exact words and simply copy and paste what was good enough for Category 1 and then say for Category 2 the same thing and for 3 and then 4 and 6? So, let me answer that. I have two points to make in response to that, Your Honor. First, I think... And I'm not trying to dodge the question, but I will say it depends on the nature of the specific documents at issue. We can talk... I can... That's actually helpful, though, just to make sure I'm clear on this. So, there are occasions where that would be enough. I think... And I think I'll... I'd like to talk a little bit more about Machado Amadas, because I think it's helpful to exactly this point, because the opinion... Can you just help me with the clarification? I just... I'm trying to understand what you answered before. There are occasions where it would be enough to copy and paste. I think it's not a question of copying and pasting. It's a question of whether or not the harm that's being identified by the government is tied specifically to the types of records at issue. So, if you have records that are very similar, sure, you could cite the same harm, but you have to tie that harm and actually explain how the harm to be protected by the deliberative process privilege, which is the quality of agency decision-making, how that applies in that given context. And that's not what we saw here. And I would point, Your Honors, to the Waller Declaration, for example. There's one paragraph. That's paragraph 20. Can I back up for a second? Of course, Ron. So, the copy and paste thing is maybe not the best language for this foreseeable harm exception, because I just want to make sure I understand what your answer is. And my understanding is that they're required to make a particularized judgment. Now, the harm, the ultimate harm, when they make that judgment and they particularize it to a document or a group of the same category of documents, as long as they've made that particularized judgment and the harm is laid out in detail to the deliberative process privilege, then they may not have, it could end up being the same words, but they can't just cut and paste. They've got to make the individualized judgment each time. And as it happens for the same, for some types of privileges, the type of harm is likely to have be described in similar words. Is that what you were saying? That's correct, Your Honor. And I apologize if I wasn't clear in responding to Judge Walker's question. I was not clear today. It is a particularized showing tied to the specific nature, the specific records that the agency is withholding. And yes, there are only a few purposes that this court has identified that are served by the deliberative process privilege. So of course, the agency is going to be referring to those specific purposes, I think, with respect to different kinds of documents. But what it can't do, and I think what it has done here, is name all the purposes that the privilege serve, protecting the candid nature of a subordinate's communications to a senior decision maker, for example, confusion to the public, all of those that have been applied by this court in different circumstances and say, these are all the purposes that the privilege serves. And we're going to withhold all of these different kinds of documents, because one or more of those purposes may be undermined if we disclose one or more of these documents. And I think if you look at the materials that were released mid-appeal by the government, in this case, after our opening brief was filed, you can see examples where this just completely breaks down. And I was pointing to the provision in the Waller Declaration, paragraph 20, which is really this umbrella paragraph that really speaks in very general terms about the purported harm that would flow from disclosure. And so I'll jump to the middle of that paragraph, but it effectively says, to require disclosure of the withheld information would prevent OIG from engaging in meaningful documented discussion about policy matters in the future, which could have a negative effect on agency decision-making and would potentially confuse the public about the reasons for the OIG's adoption, for the OIG's actions, excuse me, in this matter. It would also reveal the thought and decision-making processes of the OIG and may reflect the agency's decisions. So that rationale was proffered by OIG with respect to multiple different types of documents, including documents we now know, if you look at Joint Appendix 494, which is one of the documents that was withheld in part previously, released in full during the course of this appeal, the agency proffered that rationale to withhold a single sentence, completely factual in nature, that indicated that the OIG had provided a draft report to the FBI at one point. And so I think this is why there were, and I think at this stage we would say there's nothing deliberative, there's certainly nothing pre-decisional about that document, that's the memoranda that was attached to the final OIG report, there's certainly nothing deliberative about it. And the notion that any harm to the agency's, the quality of the agency decision-making process, which again is what the deliberative process privilege is designed to protect, is untenable. Any argument on the part of the government would be untenable. And I think that's why they released it mid-appeal, but I also think it illustrates the fundamental lack of sufficiency of the agency showing on appeal. And just to point, I'm sorry, go ahead, Your Honor, Judge Katsas. Isn't it fair to think that the robustness of the necessary explanation on foreseeable harm, which sort of would depend on the category, would depend on the sensitivity of the documents we're talking about, right? If someone makes a FOIA request for the nuclear launch codes, you wouldn't need a really long explanation on foreseeable harm, right? So that principle helps you on many of these categories, but let me press you on one that seems to me a harder one for you, which is the Comey emails. You know from context that the agency has this it's significant enough that the director of the agency feels like he has to write the New York Times, which doesn't really happen every day, sensitive subject matter, PR debacle. I mean, isn't it pretty obvious from the context that deliberations with regard to that kind of document implicate the interests of the privilege and their release would harm the interests that the privilege protects? I would say no, Your Honor. I think not all discussions are deliberative. Sometimes decisions are made without deliberation, and I think that's one of the reasons why this court's case law indicates that you look to where in the chain of command the communications are coming from and where they're going. And when we're talking about former director Comey's communications to people who worked for him, we don't know what those communications say because they've been redacted, but it's very reasonable to think on the face of those documents and particularly without any additional showing that what former director Comey is doing is explaining a decision he's made or directing someone who's a subordinate to him to carry out his instructions. And so I think that that's why the application of the deliberative process privilege itself is very fact-specific. And as you noted, Judge Katz, I think it's correct to say that the showing that the agency makes with respect to the application of deliberative process privilege is also interrelated with the foreseeable harm analysis. Right. I thought it was pretty clear. I'll go back and look at the documents, but I thought it was pretty clear that he was providing comments on a draft letter. I think there are. It may be clear to you, Your Honor, was not clear to us. It appears that he is providing information or direction, again, that's redacted in redacted form to subordinates, which, again, is relevant. And I think it also goes to the foreseeable harm question because even if the document is deliberate. Is that inconsistent? If as you call me, he's providing comments on a draft letter and you're saying, well, it looks like he was providing directions to a subordinate. But if the directions are make these edits to the draft letter, you're both the same in the description, but the one seems more squarely within the deliberative process privilege. Right. If the directions are, let's make these changes before we announce this. Position. I would definitely still be protected. I would think, Your Honor, that that it depends on the context, but it could be that the decision is already made and that Judge Comey is or for Director Comey is just instructing his subordinate to on what the decision is he has made. And again, because we don't that information is redacted. It's not it's not that's not clear. But again, I would agree. I would agree in principle that there are certain types of material in this court is recognized in coastal states, for example, that there are the there's a classic case of the deliberative process at work. And that is a subordinate attorney, for example, providing advice. And I think this flows into Judge Katz's decision in Machado Amatis. I think it's very consistent. There are certain types of decisions, line attorneys, commentary to their senior attorneys or providing legal advice on specific matters that's at the core of the deliberative process privilege. And perhaps the foreseeable harm showing is different or less rigorous than it must be for a situation where the records at issue are not the kind of decision that the deliberative or decision making process that the deliberative process privilege is really geared towards. What does our PowerPoint presentation? How should it be organized when all it does is repeat existing policy? And that is certainly what we've seen from the from the slides that were released at Joint Appendix 500 through 513, mid appeal, publicly available information. How are we going to organize that for a PowerPoint presentation? That's not the kind of decision that the deliberative process privileges geared towards protecting. And the notion that the agency has to do more to demonstrate that that harm will flow from disclosure of that information, I think, is is common sense, quite frankly, but I think is also consistent with this court's decisions, as well as the way that this the foreseeable harm provision has been applied not only by in Machado Amadeus by this court, but by the district courts as well, I see that I've run into my rebuttal time. Don't worry about that. Can I ask you a question on, on the comments, or the documents as the communications as they're developing this editorial? How do you distinguish the Krikorian case? I think, I think that there's no case law that indicates that that media strategy in and of itself, sort of quote, unquote, media strategy documents in and of themselves are necessarily just by virtue of being media strategy, are exempt from disclosure under the deliberative process privilege. And I think if we look back at the pre foreseeable harm cases, like coastal states and other cases that look at the focus on it, don't collapse the distinction between pre decisional and deliberative, you can see that and I do think that there is a strong distinction, I think it is an important factor that with respect to these documents, it is not a subordinate providing commentary, at least as far as we can tell, providing their independent, independent, candid advice to Director Comey about whether or not he should write a letter to the editor, write a letter to the editor of the New York Times is Director Comey telling his subordinates the decision that he has made. And so the the protect the harm of discouraging subordinates from providing candid advice to their superiors to aid in policymaking or decision making is not implicated there. And so I do think it is different. And it has to be looked at a case by case basis. So you make a you make a fair point. And I have Machado very much in the back of my mind, you make a fair point that it could be different when the deliberation is running from the superior to the subordinate, rather than vice versa. But even so, I mean, you could imagine a lot of circumstances where the component head is trying to figure out what to do. And of course, he has the final decision making authority, but he wants to bounce ideas off of people. You could also imagine a situation where he has made the decision to take the strongest case for you. And he says, take, take, take out the sentence that says X. And it turns out X is really dumb idea. And it would be embarrassing if that proposal were disclosed. And it doesn't seem all that different to me. This this kind of thing from the category one documents from what we had in Machado. Well, what I'll say, Your Honor, is that we're not taking any kind of categorical position actually, as to concerning whether or not there are specific types of protected subject either to deliberative process privilege, or that meet the foreseeable harm provision. Well, our position is the agency hasn't made that showing here. And I think if all and that they would be required to and perhaps they could on remand. I understand about I'm just, you know, Judge Walker opened by saying that the agency declaration and Machado was relatively short. But part of the reason for that might be that the sensitivity of those documents was pretty apparent. And maybe the sensitivity of Comey comments is similar in degree. That's, that's all I'm saying. I warn your honor that I think that the the court's conclusion in Machado a I think this, at least to my eyes, is evident from the from the opinion itself is that it was a certain specific type of document. So they're not multiple types of documents. And they were what the court was consistent with what the court has found to be really at the core of the classic case core deliberative process material, which may require not the same kind of showing that other material, including some of the material we're talking about here would require. Okay, thanks. My colleagues have any further questions? We'll give you a couple minutes on rebuttal. So Mr. is it Boussa or Boussa I apologize. Boussa your honor. Good afternoon, and may it please the court Joe Boussa on behalf of the federal government appellees. I'd like to start with what's occupied most of the discussion this morning, which is the second question presented here and the requirement the agency reasonably foresee that harm would result from disclosure. And this requirement requires the agency to consider the specific information at issue in the case Machado makes that clear. And then to link that conclusion to the interest protected by any given FOIA exemption. It doesn't narrow the types of Does it raise the degree of harm required before the agency can withhold the information it takes? I just want to I want to I want to push a little bit on it has struck me a little bit odd that like you know you apply the FOIA exemptions go through all that and then we go apply this foreseeable harm thing when apart from the parts to which foreseeable harm does not apply. So say exemptions one and three generally foreclosed by law. It seems to me what the foreseeable harm did provision did was put into every other single every other exemption an additional prong right you have to apply it to every exemption decision. So we should now understand the deliberative process privilege to have its usual elements plus you must make this particularized document or document category judgment and as we said in much Machado that the information would would cause the harm protected by that privilege. And we know from FOIA that the difference between would and could is actually material between exemptions six and seven c for example. It's a higher standard to show that a harm would happen than that it could happen. And it seems so it seems to me that in fact there is that to that degree and adjustment in how deliberative processes look at it's not enough now to say we do this stuff sort of deliberately in advance and so and it could be bad if we disclose it because it could show it could show people that you actually need to say that the nature of this document this deliver which may well then be the nature of this particular deliberative process in this circumstance would am I correct? I think yes your honor we agree with that outline here but just to highlight a few things that flow from that the first is that the agency is making a predictive judgment about the effects of disclosure here on future similar deliberative processes that's not readily susceptible to documentary evidence it's hard to see what the agency could to prove that judgment either true or false and the court's not called upon to make its own judgment here it's called upon to determine whether the agency's judgment is within a broad zone of reasonable judgments that it's capable of making on the basis of the deliberative interests at stake here and secondly I'm sorry I'm sorry where do we have any assurance in the declarations here that the government took this task seriously you know and it didn't I think you didn't have much shadow at the time the declarations because all I see is a sort of general language about here's all these different types of documents and they all were part of a deliberative process and so they'll be for treatable harm and it seems to me if we say that's sufficient in this case then the foreseeable harm function will do no work at least in the deliberate process room because all you're going to do is say remember when we told you about deliberative process yeah cut and paste as judge walker said your honor I don't think so first I want to go through individualized sort of document category if you've got more than one in the same category um document and it would cause harm not just the nature of deliberative process always the argument is always that it chills um I need more here and when you look at machado where the explanation of how the process what the process is how it worked how the input was how it was used what the nature of these blitz forms were went on for like four or five pages in the which declaration first what we've got in the in the third hardy declaration I'm at pages 248 to 249 of the joint appendix uh this is where the declarant begins the whole section on deliberative process privilege by saying look encoded categories b5-1 on the von index that's all the rec 99 records that are at issue here the fbi protected primitive privilege deliberative materials then goes on for I believe three or four sentences to discuss the general purposes behind the process privilege that's not to chill candid conversations in order to improve the quality of agency decision making and then the key sentences are disclosure of this type of information would have an inhibiting effect on agency decision making because it would chill full and frank discussions that's conclusion as to each of the next I'm sorry your honor were these paragraphs written before the oig report cover sort of cover letter was disclosed or after well we disclosed almost all of the oig cover report uh in advance of the preparation of this declaration I believe well the case has been pending I think on appeal right correct your honor correct these statements here though which are often made before your disclosure on appeal would then have would have then been defending this oig cover letter it was a determination your argument seems to be there was a determination in these paragraphs you're pointing to here that disclosure of the oig cover letter specifically looking at that document would cause foreseeable harm is that right at the time they were written yes your honor and that's because that sentence that's that okay now it's I know you've released it but explain to me how uh how on earth I can trust that this information makes that particularized judgment when it turns out this is probably why you released it on appeal it turns out that what was redacted was these words this is one example that you have since rules oig report entitled a review of the FBI's use of a fictitious associated press news in a criminal investigation that same language had already been revealed in the bond index so how can I trust so is how one can you just tell me how what foreseeable harm would come from revealing information you know a statement a description of a document you'd already revealed in bond index your honor we disclosed that because we determined yes there had been a mistake as to on appeal yes your honor I know my question is very different you're relying on the hardy declaration as having made the machado foreseeable harm judgment to retain and not disclose that very language I just quoted to you is that correct that's what this hardy language decided that's correct your honor and our basic point here is no no so I'm not as you made a disclosure on appeal do you agree then can we credit this hardy declaration with having made any kind of particularized or careful judgment when it didn't stop to notice that what it was claiming as foreseeable harm included a mere description of a document that had already publicly disclosed yes your honor because I'm not aware of any case from this court or other court saying that one error an unintentional error in an affidavit means that the court cannot rely on any other portion of that we had a second one and that was another redaction you've released where again the second one you release where again the language is just the description of the document right the second one you release the office of the inspector general has completed its report entitled a review of the fbi's impersonation of a journalist in a criminal investigation in august 2016 we provided a copy of the draft report to the fbi for comment including whether anything in the draft report was factually inaccurate or too sensitive for at the time you're telling me mr hardy said we cannot possibly release that because it would cause not just general deliberate process harm but particular making a particularized judgment that that would cause foreseeable harm that's correct your honor this case involves over six i'm sorry you got two times now where this very generalized language protected supposedly made a foreseeable harm judgment as to something that was already publicly disclosed by the government your honor this case involved over 600 pages of responsible records right i'm just asking you to confirm that yes i believe those were mistakes your honor there were a lot of documents here but the question is whether that second look what's called a foreseeable harm a second look in a particularized judgment that harm not could but would occur um and there may be a lot of harm requirement applies in cases when there's lots of documents right of course your honor but there's flexibility and how it does well there may be some flexibility but does it require that there at least be it wasn't like there were tons this is the oig cover letter it's not like there were 12 000 oig cover letters that you were having to group together as a category this was a the oig cover letter your honor i i yes the the declarant has to make a determination as to every category of records not just with respect to the category of one yes every category is separate in this case but there are six categories of records just within the deliberative process privilege there are other exemption five exempt arguments as well for lots of other records not not in this appeal there were over 600 responsive records i believe there were six different FOIA exemptions invoked and they were with the holdings and i believe over it is the relevance of all this to the foreseeable harm argument that this this sort of very generalized paragraph the paragraphs you said on sort of 248 249 extremely generalized and high level um met the foresee the sort of individualized and careful second look judgment that foreseeable harm requires an imagado you're right it's not just these two paragraphs i mean to be clear i was not able to finish my answer so there's the paragraph we were just discussing there's the first sentence on the next page saying the fbi invokes exemption five in this case because fbi employees would hesitate to offer their candidate advice and then this is crucial the descriptions of the deliberative processes within each of the six categories and the roles that those records play in those deliberative processes serves two functions it goes both to the applicability of the deliberative process privilege and it also goes to why the agency's reasonable harm determination was reasonable in this case machado shows us the way machado says that the agency's prediction of foreseeable harm in that case was reasonable on the basis of that the agency's conclusion that release of that information would chill future deliberations and that is clearly true in say category six in this case declaration there that we know at least twice was just false in making that judgment your honor in a large FOIA case there can be errors and so for can look at a very long declaration uphold most of the withholdings was a mistake that they they had a can you articulate to me what if they looked at the oig report cover cover memo at all if they picked it up and looked at it is your position that someone could have looked at that the language that was refactored and decided that there would be foreseeable harm from disclosure disclosing that information if that information had not previously been disclosed and if the declarant knows that it had already been previously disclosed that's exactly my point i'm not right and so my my understanding when they to make foreseeable harm under your theory they had to look at it that they could have made it and it was a reasonable mistake or did they maybe look at it my point is that it was a reasonable mistake that you know at the time the declaration was put together the declarant you know did not put two and two together with respect to the fact that that sentence that this draft had already been shared with the FBI had already been disclosed elsewhere in this litigation that's why we voluntarily disclosed it on appeal and that's why that issue is having already been disclosed can you just describe to me what the foreseeable harm would be if this hadn't already been disclosed with the foreseeable harm of those two sentences my understanding is the foreseeable harm would be to open up the hood on the deliberative process and and disclose to the world that oig circulated a draft before publication now i don't want to go too far down the road and saying that is the biggest harm on the planet it is a secret that that's not what i asked you is it a secret that oig circulates to involved agencies that report before releasing it i don't think in general that's the secret your honor i'm not aware of you know to what degree every time they circulate it's a secret to every time they prepare a report they share it with the agency in advance or to what extent in certain circumstances they don't but just to focus on you know the six categories that issue here i think it is beyond clear that internal deliberations about media strategy whether and when to engage with the media and write a press release you know are within the core of the deliberative process privileges every court of appeals to address that issue has held similarly with the category six um you know we have emails saying look these are the current policies recommendation this is what we should or shouldn't do with these policies we black out the recommendation that's again within the core of what the privilege protects and it is beyond reasonable for the agency i'd like to ask you about these powerpoint presentations yes your honor first of all um so one's been released but there are two more that were not are those um are those two drafts of the presentation that was released yes your honor there are drafts okay that was released um and in the von index it's just those are those are um or sorry the von index described the final presentation as um draft slides um but then when they're released uh mr gavin's email says that the attached slides were as briefed to the white house so does that mean that the release one was actually the final yes your honor that's why that's why we released it that's that's why it was released okay and then i noticed that the um um uh sir hardy's declaration said that the slides were about sorry i think it's hardy maybe it's mr wallett um described those slides very differently not about a presentation of existing policy to the white house but as proposals and recommendations about how to ultimately instruct fbi personnel about conducting undercover operations which sounds like something might fall within the process but i noticed that you did not you have not relied on that description of these documents nor on that rationale and invoking deliberative process privilege is that because there was a mistake so it is accurate that those drafts and the final presentation were prepared uh with the idea that they might be used to instruct fbi personnel as the released email shows they were also used in this presentation at the white house okay so the correct your honor this presentation is a presentation i'm sorry a demonstration or an explanation about existing policy is what certainly the final was about and you're saying that instead the draft was about proposals and recommendations on instructing fbi personnel about conducting undercover operations the draft was not about these drafts were not about explaining existing policy to the white house no your honor those i think those two senses are saying the same thing those if i say i'm describing existing certainly for deliberative process if i'm describing existing policy one agency describes uh existing policy to another agency because it's the white house but to another governmental entity that means you're describing the final policy the party declaration which i didn't see discussed in your brief talks about proposals and recommendations on how to conduct proposals and recommendations on how to conduct undercover operations no it's saying it's driving an existing policy no no these are proposals and recommendations about how to instruct including fbi personnel about existing policies so for example if the general counsel of an organization says task of support and says i want a proposal about how to train all of our people about a certain issue that person goes out and canvases all potentially applicable policies or raise them together and creates a recommend recommendatory memo about how this should happen that the draft of that memo about how to instruct people in the organization is deliberative and pre-decisional as to any final training documents and again we've released the final documented issue here the key point is the drafts of the of that document contain deliberative information about how to do that presentation how to do that instruction um and then the on the factual accuracy comments these are just some more that i have some concerns about or questions about um we have that form in the record um can you tell me where in the record judge leon concluded that the information in there factual accuracy is so intrinsically linked to the fbi's personal recommendations and opinions um so it's those facts that are so intrinsically linked with recommendations that they fall within the deliberative process privilege outside the general world the facts don't um and where is which declaration said that they were intrinsically linked that's the third hard declaration page 251 of the joint appendix where the declarant says the fbi concluded that the factual information in the responsive records here was part of the deliberation itself and inextricably intertwined with deliberative information and therefore all right i'm sorry i just want to catch up to you which page and which paragraph page 251 of the joint appendix i'm sorry your honor so that's the specific sentence and i think this dovetails with something this court said in the national archives case which is that when it comes to an agency history a draft agency history yes there's going to be lots of factual information all throughout that description but the selection of those facts the characterization of those facts the choice of which ones are relevant all are chosen based on a policy inflected judgment of the writer or the editor here what comments about basically the same type of document i just need to back you up you're talking about paragraph 55 on page 251 correct your honor okay and so what it says is the fbi concluded that the factual information in the responsive records here was part of the deliberation itself and inextricably intertwined with deliberative information um all he's doing is describing what the fbi asserted that's what we have to rely on well this is the fbi's declaration your honor so the declarant is saying i'm not saying it's his view he's just sort of it's actually what he actually was describing the bottom line position is that sufficient your honor i would read this as the declarant saying that it is true and i don't think there should be a magic words requirement in that level of parsing requirements because all they've actually all the i should think you'd want magic words because they've done the magic words here and said they're inextricably intertwined but we're given no explanation whatsoever it sounds like instead they just sort of said here's what we have to say to keep it out and so i'm sorry to interrupt i didn't mean to please go ahead so i think back to what this court has said about the segregability requirement in foia and very commonly in saying i have considered this and you know the information we have reheld withheld is not reasonably segregable from the rest of it doesn't require the repetition of that conclusion i'm sorry your honor we're missing the eye mr hardy's not saying it he's just describing the fbi position your honor on it yeah but is this usually the declarant says i've looked at them and i've concluded they're inextricably intertwined but so that's why i'm confused your honor actually i think most commonly they just say the information is inextricably intertwined here i would most reasonably read the fbi concluded that that phrase as the declarant saying i concluded that given that he's offering this declaration on behalf of the agency to explain why the withholdings are proper okay sorry and and just in the segregability point i think it important pre-existing requirement of the foia information that we withhold has to be not be able to be reasonably segregated from other disclosable information but the court has always accepted even a single paragraph or sentence saying yes this information is the remaining information is not reasonably segregable from the rest for the same reason the conclusion about i consider the information at issue in this case and release of that information would result in harm to the enough especially in a case here where there's so many different types of documents so many different types of withholdings it would it needlessly expand government resources to just repeat the same sentence at the end of each paragraph about each specific deliberative process especially when the government's already explained the nature of the deliberative process is going on and the role of those records sufficiently to trigger the protections of the privilege that same information shows why the government's determination about harm is reasonable again within that broad zone of reasonableness that's a predictive judgment not readily susceptible to documentary proof sorry go ahead judge i have to say what strikes me about the overall case is there are the different categories of documents are very different from one another and your arguments on some of them seem to me intuitively or superficially much stronger than your arguments as to others and you know i pressed your colleague about the comey comments seemed to me a relatively strong part of the case for you and you went right right to category one but we also have category two category three seem to me a lot weaker for you and i mean if you're just gonna you know we're talking about a category defined as factual accuracy measured against a legal rule that statements of fact are generally unprotected unless you show they're inextricably inextricably bound up with deliberations and your affidavit just has a boilerplate assertion this is all bound up in deliberations boom we're done that's it that's um that's giving us very little to work with doing our review for reasonableness and it seems to me very different from machado where they did say more as to the particular category at issue and the particular category at issue was much closer to the heartland rather than the periphery of an exemption your honor on categories two and three i think this court's case law regarding draft agency histories is very instructive again a history a draft agency history is going to largely consist of almost entirely factual material this court said that the factual material there cannot be dissected quote unquote from the editorial judgments underlying the preparation of that history and i think just analogy to a fact statement in a brief i'm sorry your honor that that was all before the harm provision was put in right that's correct your honor but the harm provision again doesn't change the type of interest protected or ratchet up the amount of harm required before information can be withheld it requires predictive judgment that the harm actually would come about and that judgment has to be reasonable it it elevates the standard as judge mullet said to the extent that a wood wood is stronger than could it seems to require a greater degree of particularization in the explanation right you can't just say um oh well histories histories can be protected could be protected and this is a history qed right so and to be clear we have more than that here right so the waller declaration says i want to make this point my colleague on the other side pointed to paragraph 20 but i would point to paragraphs 14 and 16 that's pages 278 to 279 of the joint appendix which talk more specifically about these drafts where the declarant ms waller says that release of that information would chill the oig's ability to have candid discussions between the subject of the report and oig before the finalization of a report so just to drill down a little bit on drafts what would be the reasonably foreseeable harm in releasing a redacted draft which shows everything that made its way into the final report unchanged well your honor it would reveal the degree to which the writer of that draft accurately predicted or did not what the final decision maker is going to want to have out there right so it's going to reveal the kind of editorial judgments and suggestions that this court said were protectable honestly in the heartland of the deliver of process privilege you know the archive they don't read as if this is some kind of questionable application of the privilege they read as if this is an application to the heartland of that privilege and i think that's correct and so you know the the oig declaration from ms waller says that look release of a draft it's not final shows our preliminary thinking on this subject and it would chill our ability to have future discussions of this type in the future that is true people that it's just a matter of common sense and human nature that people when they're writing a draft need to have confidence that you know it's not going to be released in the future in order to have truly candid conversations and to think and to improve the quality of government decision making that's the core application of the privilege it applies to a draft oig report in the same way that it applies to a draft agency history nothing in the legislative history or certainly the text of the 2016 amendment says well we're really going to be working a revolution in the way the privilege applies you know to the contrary just says the agency has to reasonably foresee that release would lead to one of the harms you know that's protected by the privilege you know we've shown why these declarations you know past that minimum threshold we did that without the benefit of this court's instruction in machado amity and so if the declarations fall short in any respects as to any particular categories we do think a remand would be in order but i've tried to explain why in a sprawling case involving here hundreds in other cases thousands of documents and dozens of different types of withholdings in many different categories of of information there's no reason to needlessly expand government resources to repeat the same in each paragraph and i assume you're you're going to give me basically the same answer on the factual accuracy category which is there's some instances where factual statements are bound up in deliberations and even if that seems like more the exception than the rule it's enough for the agency just to have a a one sentence statement that we looked at all the factual accuracy comments and withheld ones that are inextricably intertwined with deliberations that's right your honor but i also want to highlight that that follows from the conclusion as to the draft oig reports themselves right it's because the factual content there is inextricably intertwined cannot be dissected from policy-based judgment so to comments on that it's just like if a senior partner and an associate in a law firm are working on a draft brief and the factual statement in that brief obviously the factual statements they're all fact but they're all chosen with very clear policy policy-based judgment in mind ditto with this court's opinions and the factual sections therein i don't think anyone can say that you know one person's comments on a draft brief circulating in your court you know are not deliberative simply because they involve factual material it's just like the factual material in a draft agency history and it's protected i i hear you it just seems like on that view of the world the um the amendment is as a practical matter going to do very little work very little extra work above and beyond the exemption i i don't think that's true you know i don't have a categorical view of exactly how many cases the amendment's going to really make a difference in but it's a proceed it's primarily a procedural requirement that's going to have an effect on the front end it requires the agency to actually consider the specific information and even if in an esoteric case it could have gotten away with well the privilege would reply i'm not actually sure if there'd actually be any harm that's not going to be good enough anymore the agency has to considering that think no it actually would result in that harm and so you're going to get more upfront disclosures but there's no indication in the text of the amendment that congress thought there'd be a revolution in the way that any of the underlying exemptions work in particular the legislative history shows look they thought they might want to make some changes regards to this privilege but they're only able to agree on language as to the the 25-year event horizon i agree with you on that but it seems like there's a broad middle ground between a revolution and a here and there screwball case and i'm not i'm not sure the i'm not sure this is designed to just get at the screwball cases i think machado says look it takes a could and makes it a wood and so on the edges it's going to have that effect but that could to wood language is about the predictive judgment and the relative likelihood of the harm occurring not about the nature of the harm or the size of it it it also focuses the analysis on the documents at issue i mean we didn't talk about deliberative process in the subordinate lawyers to superiors regarding the adjudication of pending cases pending appeals right but to be clear you know the reporters committee filed amicus brief saying well actually that case should come out even in machado you know and machado disposes of many of the arguments you're facing here it says look this really is about a predictive judgment it's about broad-based reasonableness it's not about ratcheting up the type or the amount of harm and the nature of the interests that are protected and the other final thing i want to say about machado is the sentences there about foreseeable harm all talk about the specific deliberative process at issue because there's only one deliberative process at issue i think this court has always left flexibility for how how an agency makes out it's showing about the withhold ability under an exemption in a case involving large number of documents large number of withholdings and that's appropriate taking together the declarations the vaughn index um and the the information we've released on the basis of that entire record the question is whether the judgment was reasonable not whether the court would have made the same judgment okay thanks thank you we ask that you affirm can i jump in with one question it'll be short can you imagine a time can you imagine a scenario when release of a draft would not chill and if so when there's a huge number of factual scenarios in the federal government it's a big government there's lots of drafts and i could imagine that if say the foy office gets a request and they go to the person let's say the person who still works there and they go to that person they say what do you think about foreseeable harm here if the person literally doesn't care and says that and if in the judgment of the FOIA officer that that actually represents everybody in the future i know i said only one but that's that the chill is the future chill we're worried we're worried about chilling future authors of drafts so it doesn't really matter if the original author is fine with the release no and that's where i was trying to get with the extension of my answer your honor it's not just does the author care but it's also look is that the view of basically everyone who fulfills this function inside of the federal government and if in fact it's not going to chill anybody or if the public interest in making the disclosure outweighs whatever the chill would have been the government could make a discretionary release of course but it's going to be a very fact-based determination using common sense and also the government's experience with what people fulfilling this function need to enhance the quality of our decision making and it is true that this court's pre-existing case law about the privilege has already drawn pretty strict boundaries about where it applies and the basis on which this court drew those boundaries even before foreseeable harm was largely about whether that harm would arise if that type of information were released that's why the foreseeable harm requirement as applied to the process privilege is not going to work a revolution in what's protectable and what's not because this court's case law already did quite a bit of that work all this does is move the could to a would in the context of a predictive judgment i'm sorry judge i think might be muted i apologize for interrupting that's my mistake but i apologize judge walker are you done i just i am thank you i just um having lots of technical difficulties today um uh the government gets gazillions of requests um are you aware of any so you don't have to describe an example but are you just aware as a practical matter whether any uh deliberative process what would have been a deliberative process um withholding prior to the foreseeable harm amendment has been revisited and released in the delivery i'm really worried about deliberate focusing particularly on deliberative process here that the government has done even even just within the justice department it's hard for me to ask you to know about every foyer agency and like every for a decision in the government and i have to apologize your honor i don't have that kind of panoramic view into our foyer dockets it's a crazy broad question i have to apologize i was just curious whether any chance your client knew that they had no i don't have that you know i just don't want to highlight again the extent to which the privilege was already designed to serve a specific purpose to prevent the chilling of future deliberations and this court has been pretty strict about where it applies and where it doesn't apply even before the foreseeable harm requirement and so i think that's why it wouldn't actually be surprising if you know it has an effect on the margins it changes the could to the would but it's not going to work a revolution um my colleagues have any further questions all set okay thank you mr thank you your honor miss townsend will give you two minutes thank you your honor and i'll be very brief um i do want to address uh with respect to the factual accuracy comments just to ensure that the record is clear uh mr busa pointed to paragraph 55 of the third harley declaration um which is joint appendix 251 um citing that that sentence the fbi concluded that the factual information in the response of records here was part of the deliberation itself and inextricably intertwined with deliberative information just to be clear that sentence is purportedly applicable to every single piece of factual information that might have been withheld by the government in all the records it's not specific to the factual accuracy comments and i would note that the government has taken the position that the factual accuracy comments the the deliberative process is actually related to the work of the of oig and the waller declaration which is the oig declaration doesn't speak to the factual accuracy comments at all so i think just to clarify that that that and and to go to the segregability point i also wanted to raise this as well um segregability is a long-standing requirement of foia with respect to exemptions there's also a separate segregability requirement that congress enacted as part of the harm provision so uh not only um must agencies uh segregate non-exempt information from exempt information they must segregate exempt information that is harmful from exempt information that is not harmful and i did want to touch very briefly in just the last 30 seconds on this notion of of mr busa's continued citation to case law concerning draft agency history with respect to agency history is nothing left like a draft oig report inspector generals are independent they're required by statute to provide oversight to agencies agencies are required by statute to provide aid and information to inspectors general um and uh even even the case law that mr bruce relies on draws a factual distinction in draft agency histories dudman for example makes very clear that even if a document is a draft um an agency cannot withhold factual material within that draft and here the agencies withheld all of the draft oig reports and again as judge katz has noted that case uh dudman as well as the national security archive case is not only pre-foreseeable harm provision but the bay of pigs case the national security archive case that mr busa cited was in fact as a legislative history indicates one of the rationales for enacting foreseeable harm provision and in particular the 25 25 year sunset provision um so if there are no further questions your honor thank you for your time and we will respectfully request that it be reversed and remanded other questions for my colleagues all right thank you both the case is
judges: Millett, Katsas, Walker